STATE OF NORTH CAROLINA v. MELVIN RICKY JOHNSON

No. COA95-514

(Filed 19 November 1996)

**1. Constitutional Law § 304 (NCI4th)— effective assistance of counsel—failure to make speedy trial motion—no denial of speedy trial**

Defendant's conviction for possession of cocaine was not obtained without effective assistance of counsel based on failure to move for dismissal for violation of constitutional speedy trial rights where defendant was charged on 29 August 1992 and tried on 17 October 1994. Balancing the four factors enunciated in *Barker v. Wingo*, 407 U.S. 514, defendant was not denied the right to a speedy trial; thus there was no reasonable probability that had counsel advanced a motion to dismiss based on denial of that right the result of the proceeding would have been different.

**Am Jur 2d, Criminal Law § 985.**

**Adequacy of defense counsel's representation of criminal client regarding speedy trial and related matters. 6 ALR4th 1208.**

**2. Constitutional Law § 304 (NCI4th)— effective assistance of counsel—failure to compel informant's identity—acquittal on charge to which informant's testimony would have related**

Defendant's conviction for possession of cocaine was not obtained without effective assistance of counsel based on his second attorney's withdrawal of a motion, filed by the first attorney, to compel disclosure of an informant's identity where defendant was acquitted of possession with intent to sell or deliver and therefore suffered no prejudice from the absence of testimony corroborating his denial of selling cocaine.

**Am Jur 2d, Criminal Law §§ 748, 749.**

**Accused's right to, and prosecution's privilege against, disclosure of identity of informer. 76 ALR2d 262.**

**Accused's right in state courts to inspection or disclosure of evidence in possession of prosecution. 7 ALR3rd 8.**

STATE v. JOHNSON

[124 N.C. App. 462 (1996)]

3. **Evidence and Witnesses § 724 (NCI4th)— conviction of possession of cocaine—admission of evidence of drug activity in which defendant not involved—acquittal of intent to sell—no prejudice**

There was no prejudice in a conviction for possession of cocaine in the admission of evidence of drug activity which did not involve defendant at the location at which defendant was arrested where defendant was acquitted of the offense of possession with intent to sell or deliver cocaine.

**Am Jur 2d, Criminal Law § 985.**

**Admissibility of evidence as to other offense as affected by defendant's acquittal of that offense. 25 ALR4th 934.**

**What constitutes illegal constructive possession under 21 USCS § 841(a)(1), prohibiting possession of a controlled substance with intent to manufacture, distribute, or dispense the same. 87 ALR Fed. 309.**

4. **Narcotics, Controlled Substances, and Paraphernalia § 216 (NCI4th)— possession of cocaine—sentencing—restitution of cost of drug analysis**

The trial court did not err when sentencing defendant for possession of cocaine by ordering defendant to pay restitution to the SBI for the cost of analyzing the cocaine pursuant to N.C.G.S. § 90-95.3(b). Although defendant maintains that the statute violates the principle of separation of powers, he relies solely upon dicta in *Shore v. Edmisten, Atty. General*, 290 N.C. 628, and *Shore* relies on *Ex parte Coffelt*, 228 P.2d 199 (1951), which has been overruled. Notwithstanding, the legislative branch in enacting N.C.G.S §. 90-95.3(b) did not improperly control the actions of the judiciary in that the ordering of restitution for the analysis of drugs is clearly incidental to the primary function of the trial court sitting in a criminal matter and is reasonably related to the costs of administering the criminal justice system; the General Assembly cannot be accused of tax gathering through the court system because the burden imposed bears a direct relation to the cost of prosecuting the individual defendant; and the problem of deterring the exercise of the right to stand trial before conviction is not present here.

**Am Jur 2d, Criminal Law §§ 572, 575.**

**5. Narcotics, Controlled Substances, and Paraphernalia § 42 (NCI4th)— possession of cocaine—acquittal of intent to sell—forfeiture of cash on person**

The trial court erred in sentencing defendant for possession of cocaine by ordering forfeiture of $460 seized from defendant's person at his arrest where defendant was acquitted of possession with intent to sell and deliver. N.C.G.S. § 90-112(a)(2) is a criminal (or *in personam*) as opposed to a civil (or *in rem*) forfeiture statute. Criminal forfeiture must follow criminal conviction.

**Am Jur 2d, Forfeitures and Penalties § 32; Searches and Seizures § 212.**

**Conviction or acquittal in criminal prosecution as bar to action for seizure, condemnation, or forfeiture of property. 27 ALR2d 1137.**

Appeal by defendant from judgment entered 20 October 1994 by Judge A. Leon Stanback in Durham County Superior Court. Heard in the Court of Appeals 29 January 1996.

*Attorney General Michael F. Easley, by Assistant Attorney General F. J. Di Pasquantonio, for the State.*

*Christy & Ferguson, by Jay H. Ferguson, for defendant-appellant.*

JOHN, Judge.

Defendant was found guilty by a jury 20 October 1994 of possession of cocaine. He received a suspended sentence and was placed on five years supervised probation. The trial court ordered defendant, *inter alia*, to pay $100 restitution to the State Bureau of Investigation for the cost of analyzing the cocaine and to forfeit "to the School Fund" $460 seized from his person. Defendant appeals.

The essentially undisputed background facts are as follows: As the result of an August 1992 tip to the Durham Police Department that controlled substances were being sold at 1212 Dawkins Street, Investigator Milton Alston (Alston) conducted surveillance of the premises and observed activity consistent with that of trafficking in drugs. Alston subsequently enlisted an informant who was successful in buying cocaine from an unidentified individual at the residence in question. A second, subsequent transaction produced similar results.

Based upon his observations and the two purchases of cocaine, Alston obtained a search warrant for the premises at 1212 Dawkins Street. The warrant was executed 29 August 1992, at which time defendant, his mother, and a young woman were present. While searching defendant, police officers located a plastic bag containing 2.1 grams of cocaine in his front right pants pocket and discovered $481 in cash in his front left pocket. Police also found two plastic bags containing three grams of marijuana in a kitchen cabinet, and scales, plastic "baggies," and twist ties in the kitchen.

Defendant was arrested and later indicted on charges of possession of marijuana, possession of cocaine and possession with intent to sell or deliver cocaine. The marijuana charge was subsequently dropped and defendant was acquitted at trial of the offense of possessing cocaine with the intent to sell or deliver. Judgment was entered 20 October 1994 on the possession conviction.

---

I.

[1] Defendant's first contention is that his conviction was obtained without the effective assistance of counsel guaranteed by the Constitutions of the United States and North Carolina. He maintains a motion by counsel to dismiss the charges against him for violation of his federal and state constitutional rights to a speedy trial would have been granted, yet was never made. Defendant was charged with the crimes *sub judice* 29 August 1992, but was not tried until the 17 October 1994 session of court.

When claiming denial of effective assistance of counsel,

[a] defendant must [first] show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*State v. Braswell,* 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (emphasis omitted) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, *reh'g denied,* 467 U.S. 1267, 82 L. Ed. 2d 864 (1984)).

However, if the appellate court determines "there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different," it need not consider in the first instance whether counsel's performance was actually deficient. *Id.* at 563, 324 S.E.2d at 249. The standard measuring ineffective assistance of counsel is the same under the United States and North Carolina constitutions. *Id.* at 562, 324 S.E.2d at 248. Therefore, our initial step is to examine whether defendant was indeed denied the right to a speedy trial such that "the result of the proceeding would have been different," *id.* at 563, 324 S.E.2d at 249, had defendant's counsel made a dismissal motion grounded upon violation of this right.

The United States Supreme Court has set forth a balancing test to assess whether a defendant's Sixth Amendment right to a speedy trial has been transgressed. The test focuses upon four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 117 (1972). No one factor alone is decisive of the issue for or against a defendant; rather, the factors must be examined as a whole, "with such other circumstances as may be relevant." *Id.* at 533, 33 L. Ed. 2d at 118. The test under the speedy trial provision of Article 1, § 18 of the North Carolina Constitution is identical. *State v. Webster*, 337 N.C. 674, 678, 447 S.E.2d 349, 351 (1994).

As to the first factor, the duration of time between arrest and trial is not determinative of whether a violation of the constitution has occurred; an overly lengthy time period merely triggers examination of the other three factors. *State v. Jones*, 310 N.C. 716, 721, 314 S.E.2d 529, 533 (1984). We believe the twenty-six month lag herein between defendant's arrest and trial requires consideration of the remaining factors. *See State v. Hill*, 287 N.C. 207, 211, 214 S.E.2d 67, 71 (1975) (twenty-two month delay); *see also Webster*, 337 N.C. at 679, 447 S.E.2d at 351 (sixteen month delay).

Although mutually conceding the record is unclear concerning the reason for the delay in defendant's trial, both defendant and the State advance countervailing assertions in their appellate briefs. The State points out that the defendant's initial appointed counsel moved to withdraw 2 September 1993, citing a "fundamental disagreement" with defendant regarding the handling of his case and defendant's specific request that counsel withdraw. Substitute counsel was

appointed 8 November 1993. Defendant responds that "the charges [were] not of such complexity to require an unusual amount of preparation for either the State or the defendant" and notes defendant's pretrial motions were all filed by 2 September 1993, more than thirteen months prior to trial.

"The defendant has the burden of showing that the reason for the delay was the neglect or willfulness of the prosecution." *Webster*, 337 N.C. at 679, 447 S.E.2d at 351. On the instant record, which defendant concedes is inconclusive, defendant has not met that burden.

Regarding the third factor, a letter in the record from defendant to Judge Gregory Weeks, apparently written shortly after a 28 June 1994 hearing, states, "I have previously and is [sic] currently requesting, to no avail, that a motion for a speedy trial be brought before the court." Assertion of the right to a speedy trial is " 'entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.' " *Id.* at 680, 447 S.E.2d at 352 (quoting *Barker*, 407 U.S. at 531-32, 33 L. Ed. 2d at 117). In the case *sub judice*, no assertion of the right to a speedy trial appears of record until approximately twenty-two months following defendant's arrest, notwithstanding defendant's claim to have earlier pressed for such a motion to be filed. As in *Webster*,

> [d]efendant's failure to assert [his] speedy trial right sooner in the process does not foreclose [his] speedy trial claim, but it does weigh somewhat against [his] contention that [he] has been unconstitutionally denied a speedy trial.

*Id.*

Lastly, we consider the issue of prejudice. The purpose of the constitutional right to speedy trial is:

> (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Id.* at 681, 447 S.E.2d at 352 (emphasis omitted) (quoting *Barker*, 407 U.S. at 532, 33 L. Ed. 2d at 118).

Defendant was not incarcerated pending trial, but claims the delay hampered his ability to mount a defense. Defendant's mother died 13 August 1994, two months prior to his trial. Defendant insists

that had his mother been alive at the time of trial, she could have explained the "innocuous nature" of the scales, plastic "baggies," and twist ties found in her kitchen and would also have testified concerning the source and ownership of the money found in defendant's pocket. In the absence of his mother, defendant continues, he was compelled to testify on his own behalf regarding these matters so as to protect himself from a conviction of possession with intent to sell or deliver cocaine. In consequence of the necessity of his taking the stand, defendant concludes, he was forced to acknowledge ownership of the cocaine found in his pocket, thereby incriminating himself on the possession charge. Defendant's argument is unpersuasive.

First, defendant was acquitted of the greater crime of possession with intent to sell or deliver a controlled substance. Further, defendant was not prejudiced by the admission contained in his testimony.

A felonious possession of narcotics conviction requires proof the defendant (1) possessed the controlled substance at issue (2) knowingly. *State v. Weldon*, 314 N.C. 401, 403, 333 S.E.2d 701, 702 (1985). Ownership of the controlled substance need not be shown. *State v. Pevia*, 56 N.C. App. 384, 388, 289 S.E.2d 135, 138, *cert. denied*, 306 N.C. 391, 294 S.E.2d 218 (1982). Moreover, when narcotics are found on premises under the control of a defendant, this circumstance, in and of itself, gives rise to the inference that the defendant had possession of the drugs as well as knowledge of their presence. *Weldon*, 314 N.C. at 403, 333 S.E.2d at 703.

In the case *sub judice*, Alston testified he recovered a bag containing 2.1 grams of cocaine from defendant's right front pants pocket, *i.e.*, from his *person*, thus giving rise to the inference defendant knowingly possessed the cocaine. In addition, ownership was not an element of the charge, and defendant's acknowledgment of ownership was of small consequence. In sum, in view of the substantial other evidence attributable to the charge of possession, we believe defendant would in all likelihood have been convicted of that crime even absent the admission of ownership occasioned by his testimony.

Balancing the four factors enunciated in *Barker v. Wingo*, we conclude defendant was not denied the right to a speedy trial; thus, there was no "reasonable probability" that had counsel advanced a motion to dismiss based on denial of that right "the result of the proceeding would have been different," *Braswell*, 312 N.C. at 563, 324 S.E.2d at 249. Defendant's contention he was denied effective assistance of counsel on this basis therefore fails.

STATE v. JOHNSON

[124 N.C. App. 462 (1996)]

## II.

[2] Defendant also claims he was denied effective assistance of counsel by virtue of his second attorney's withdrawal of a motion, filed by the first, to compel disclosure of the informant's identity. According to defendant,

> [t]he informant was a material and necessary witness for the defendant to corroborate that it was not the defendant who sold the drugs during the controlled buys and that others lived in the residence.

To the contrary, we again note defendant was acquitted of possession with intent to sell or deliver cocaine. He therefore suffered no prejudice from the absence of testimony by the informant corroborating his denial of selling cocaine at 1212 Dawkins Street. Defendant's alternative claim of ineffective assistance of counsel therefore also fails. *See Braswell,* 312 N.C. at 562, 324 S.E.2d at 248 ("defendant must show that [counsel's] deficient performance prejudiced the defense").

## III.

[3] Defendant's third contention is that the trial court erred by admitting evidence of drug activity at the Dawkins Street location which did not involve defendant. He points, for example, to Alston's testimony relating to two controlled narcotics purchases which did not identify defendant as the seller. However, as defendant was acquitted of the offense of possession with the intent to sell or deliver cocaine, he has failed to show prejudice in the admission of the challenged evidence. *See* N.C.G.S. 15A-1443(a) (1988) (defendant must show "reasonable possibility" that had error not been committed, different result would have occurred).

## IV.

[4] Defendant next argues the trial court erred by ordering restitution of the expense of analyzing the cocaine found in his possession. The applicable statute is N.C.G.S. § 90-95.3(b) (1993), which states:

> When any person is convicted of an offense under [the Controlled Substances Act], the court may order him to make restitution in the sum of one hundred dollars ($100.00) to the State of North Carolina for the expense of analyzing any controlled substance possessed by him or his agent as part of an investigation leading

to his conviction. Any funds received under this subsection shall be deposited in the General Fund.

In his argument, defendant relies on certain statements in *Shore v. Edmisten, Atty. General*, 290 N.C. 628, 633-34, 227 S.E.2d 553, 559 (1976), and maintains the statute violates the principle of separation of powers.

Defendant first points to the statement in *Shore* that

[a] state or a local agency can be the recipient of restitution where the offense charged results in particular damage or loss to it over and above its normal operating costs.

*Id.* While its source is not specifically cited in *Shore*, the foregoing principle is enunciated in N.C.G.S. § 15A-1343(d) (1988 & 1995 Cum. Supp.) (restitution to government agency permitted only for damage or loss "over and above its normal operating costs"). At common law, costs in criminal cases were unknown; liability for costs in criminal cases is therefore dictated purely by statute. H.C. Lind, Annotation, *Items of Costs of Prosecution for which Defendant May Be Held*, 65 A.L.R.2d 854, § 2 (1959).

Defendant further cites dicta in *Shore* that

[i]t would not . . . be reasonable to require the defendant to pay the State's overhead attributable to the normal costs of prosecuting him.

290 N.C. at 634, 227 S.E.2d at 559. However, the overhead faced by a court and the particular costs it experiences in prosecuting individual cases may be viewed as distinctly separate items. Overhead, for example, is defined as:

those general charges or expenses in a business which cannot be charged up as belonging exclusively to any particular part of the work or product.

Webster's Third New International Dictionary 1608 (1967).

The *Shore* opinion first supports the dicta cited by defendant by referencing *People v. Baker*, 112 Cal. Rptr. 137 (Cal. Ct. App.), *aff'd in part and vacated in part*, 113 Cal. Rptr. 248 (1974), which held that a defendant may not be charged with the costs of prosecuting his or her particular case. However, the California court in *Baker* was engaged solely in the interpretation of a state statute as opposed to acknowledging a widely recognized rule regarding costs. *See* 112 Cal.

Rptr. at 143-44. Indeed, many jurisdictions approve the imposition of costs relating to the actual expense of prosecution. *See* 65 A.L.R.2d 854, *supra*; 24 C.J.S. Criminal Law § 1738 (1989).

The *Shore* dicta upon which defendant premises his argument also cites to *State v. Mulvaney*, 293 A.2d 668 (N.J. 1972). However, the thrust of the *Mulvaney* decision was that no specific statute authorized the trial court to levy costs of prosecution against a defendant, not that it was either unreasonable or impermissible in general to do so.

The third case referred to by *Shore* is *People v. Teasdale*, 55 N.W.2d 149 (Mich. 1952), which interpreted a Michigan statute allowing imposition of "costs" as a condition of probation. The court determined the statute permitted only those costs incurred in connection with a particular defendant's case, and excluded

> expenditures in connection with the maintenance and functioning of governmental agencies that must be borne by the public irrespective of specific violations of the law.

*Id.* at 151.

In sum, the statement in *Shore* upon which defendant relies regarding what costs may properly be imposed against a criminal defendant is at best ambiguous, and examination of the cases cited therein affords but limited illumination. Hence, the rule of law which may truly be gleaned from *Shore* is the statutory provision set out in G.S. § 15A-1343(d):

> no government agency shall benefit by way of restitution except for particular damage or loss to it over and above its normal operating costs . . . .

The question thus becomes whether assessment of the expense of analyzing narcotics authorized by G.S. § 90-95.3(b) may be considered part of the "normal operating costs" of the prosecuting governmental authority.

Statutes which are *in pari materia*, or relate to the same subject matter, must be construed together in order to ascertain legislative intent. *Carver v. Carver*, 310 N.C. 669, 674, 314 S.E.2d 739, 742 (1984). However, if the statutes pose an "irreconcilable conflict, the latest enactment will control, or will be regarded as an exception to, or qualification of, the prior statute." *State v. Hutson*, 10 N.C. App. 653, 657, 179 S.E.2d 858, 861 (1971).

In the case *sub judice*, the phrase "normal operating costs" in G.S. § 15A-1343(d) arguably may be interpreted to refer to overhead costs, and not to those incurred in connection with a specific prosecution. In such manner, G.S. § 90-95.3(b) would not conflict with G.S. § 15A-1343(d), as the cost of analyzing drugs is incurred by the prosecution only in connection with particular cases. However, assuming *arguendo* the expense of drug analysis is properly considered a "normal operating cost[]" of the governmental agency prosecuting criminal offenders, G.S. § 90-95.3(b) may be seen as "an exception to, or qualification of," *Hutson*, 10 N.C. App. at 657, 179 S.E.2d at 861, G.S. § 15A-1343(d), which is the earlier law (G.S. § 15A-1343(d) was enacted in 1978 and G.S. § 90-95.3(b) in 1990). Thus, whichever meaning is assigned to "normal operating costs" within G.S. § 15A-1343(d), the validity of G.S. § 90-95.3(b) is not affected.

As to defendant's argument regarding the separation of powers, *Shore* makes the following statement:

> It has been held that payments ordered by courts to reimburse the state for its general overhead attributable to prosecution costs violates the principle of separation of powers in that the judge is assuming the legislative function of allocating the resources of the state.

290 N.C. at 634, 227 S.E.2d at 559.

*Shore* cites *People v. Barber*, 165 N.W.2d 608 (Mich. Ct. App. 1968) for this proposition, although it appears the case was decided on a basis other than separation of powers. *Shore* also cites *Ex parte Coffelt*, 228 P.2d 199 (Okla. Crim. App. 1951). *Coffelt* addressed an Oklahoma law mandating assessment of $1.00 against each person convicted of violating any state law. The sum was to be placed in a Parole Fund used to defray salaries and expenses of the Pardon and Parole Officer. *Id.* at 200. The Criminal Court of Appeals of Oklahoma indicated that "costs taxed in a criminal proceeding must bear a true relation to the expenses of the prosecution," *id.* at 201, and held the assessment did not relate to the expenses of prosecution:

> [T]he legislature seeks to collect under the guise of costs a tax for the maintenance of the Pardon and Parole officer and his assistants. Such an attempt clearly violates the fundamentals of the division of powers. It is an attempt to make the courts discharge the function of the executive branch of the government and use them as a tax gathering agency, and appropriate the moneys thus

**STATE v. JOHNSON**

[124 N.C. App. 462 (1996)]

collected for the maintenance of a branch of the executive department of government.

*Id.* at 202.

However, *Coffelt* has since been overruled by *State v. Claborn*, 870 P.2d 169 (Okla. Crim. App. 1994), which rejected the notion that costs must relate to a particular defendant's prosecution:

> as long as a criminal statutory assessment is reasonably related to the costs of administering the criminal justice system, its imposition will not render the courts "tax gatherers" in violation of the separation of powers doctrine.

*Id.* at 171.

In *State v. Ballard*, 868 P.2d 738 (Okla. Crim. App. 1994), the Oklahoma court also upheld against a separation of powers challenge a statute requiring assessment against persons convicted of violating the state's Uniform Controlled Dangerous Substance Act of between $500 and $3000 to be used for drug abuse education and prevention services. The *Ballard* court reasoned:

> The imposition of the assessment is not central to the function of the courts of this state: it has no bearing on a determination whether the defendant is guilty or innocent; the amount of time the defendant should be imprisoned within the statutory guidelines, or whether the court exercises discretion in granting probation; how much fine he is to pay; or any other issue central to the administration of criminal justice in this state. It is clearly incidental to the primary function of the trial court sitting in a criminal matter. Since it is clearly incidental, and does not otherwise interfere with the primary function of the Judicial branch of government, there is no unconstitutional violation of separation of powers by its imposition.

*Id.* at 742-43. Other states have also examined separation of powers arguments regarding costs and rejected them. *See, e.g., State v. Lane*, 649 A.2d 1112 (Me. 1994); *Commonwealth v. Nicely*, 638 A.2d 213 (Pa. 1994); *State v. Smith*, 576 P.2d 533 (Ariz. Ct. App. 1978); *State v. Young*, 238 So.2d 589 (Fla.), *appeal dismissed*, 400 U.S. 962, 27 L. Ed. 2d 381 (1970).

The principle of separation of powers is enunciated in Article I, § 6 of our state constitution as follows:

The legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other.

Accordingly,

[e]ach of these co-ordinate departments has its appropriate functions, and one cannot control the action of the other in the sphere of its constitutional power and duty.

*State v. Holden*, 64 N.C. 829 (1870).

The burden of showing the unconstitutionality of a statute rests upon the party challenging it. *State v. Greenwood*, 12 N.C. App. 584, 591, 184 S.E.2d 386, 390 (1971), *rev'd on other grounds*, 280 N.C. 651, 187 S.E.2d 8 (1972). Defendant relies solely upon dicta in *Shore* to support his contention that G.S. § 90-95.3(b) contravenes the constitutional provision for the separation of powers; in turn, *Shore* relies on *Coffelt*, which has been overruled. Notwithstanding, to address the heart of defendant's argument, we do not perceive the legislative branch as improperly controlling the actions of the judiciary through the enactment of G.S. § 90-95.3(b). The ordering of restitution for the analysis of drugs is "clearly incidental to the primary function of the trial court sitting in a criminal matter," *Ballard*, 868 P.2d at 742, and "reasonably related to the costs of administering the criminal justice system." *Claborn*, 870 P.2d at 171.

Moreover, the General Assembly cannot be accused of "tax gathering" through the court system by imposing the $100 cost under G.S. § 90-95.3(b). Even under the rule of *Coffelt*, which has been supplanted in Oklahoma by the much broader rule of *Claborn*, the statute would survive, as the burden it imposes bears a direct relation to the cost of prosecuting the individual defendant.

In addition, although the court in *Coffelt* expressed concern that unbridled imposition of costs upon criminal defendants would deter the exercise of the right to stand trial before conviction, 228 P.2d at 202, no such problem is present here. G.S. § 90-95.3(b) imposes a discrete cost for a specific service and thus can hardly be fairly characterized as unbridled. Further, we cannot say the $100 assessment is of such magnitude as to deter a defendant from forcing the prosecution to trial. Moreover, nothing in the statute restricts assessment of the analysis fee to individuals who have been convicted at trial rather than upon a guilty plea. Finally, a convicted defendant ordered to pay a fine or costs may not be imprisoned for failure to comply if the delinquency in paying was "not attributable to a failure on his part to

make a good faith effort to obtain the necessary funds for payment." N.C.G.S. § 15A-1364(b) (1988). Liability for costs may also be reduced or revoked entirely if the court finds the defendant lacks the ability to pay them through no fault of his own. *See* N.C.G.S. § 15A-1364(c) (1988).

In conclusion, defendant's reliance on *Shore* notwithstanding, we hold G.S. § 90-95.3(b) does not violate the principle of separation of powers.

## VI.

**[5]** Defendant's final assignment of error relates to the trial court's order of forfeiture of $460 seized from defendant's person. N.C.G.S. § 90-112(a)(2) provides that the following shall be subject to forfeiture:

> All money . . . which [is] acquired, used, or intended for use, in selling, purchasing, manufacturing, compounding, processing, delivering, importing, or exporting a controlled substance in violation of the provisions of [the Controlled Substances Act.]

At the time of defendant's arrest, $481 was located in his left pants pocket. Defendant testified the money consisted of approximately $300 given him by his mother for safekeeping in the hours prior to his arrest and $161 from his job with a janitorial service. Alston testified that a twenty-dollar bill found in defendant's pocket was the same bill used by the informant to purchase cocaine at 1212 Dawkins Street the day immediately preceding the date of defendant's arrest. Although the record is not entirely clear on the matter, it appears this latter $20 was not included in the court's forfeiture order and defendant has not argued for its return.

Defendant points to *State v. McKinney*, 36 N.C. App. 614, 617, 244 S.E.2d 455, 457 (1978), which held that currency is not subject to forfeiture under G.S. 90-112 "solely by virtue of being found in 'close proximity' to the controlled substance which defendant was convicted of possessing." *See also State v. Fink*, 92 N.C. App. 523, 533-34, 375 S.E.2d 303, 309 (1989) ("mere possession of currency in close proximity to narcotics does not warrant forfeiture"), and *State v. Teasley*, 82 N.C. App. 150, 167, 346 S.E.2d 227, 237 (1986), *appeal dismissed and disc. review denied*, 318 N.C. 701, 351 S.E.2d 759 (1987) ("mere possession of a large amount of money, together with narcotics, does not subject defendant" to forfeiture). Defendant maintains his acquittal of the crime of possession with intent to sell or deliver cocaine created an insurmountable obstacle to judicial deter-

mination that the seized money was acquired through selling or delivering cocaine and thus subject to forfeiture. We believe defendant's argument has merit.

G.S. § 90-112(a)(2) is a criminal, or *in personam*, forfeiture statute, as opposed to a civil, or *in rem*, forfeiture statute. *See U.S. v. Winston-Salem/Forsyth County Bd. of Educ.*, 902 F.2d 267, 271 (4th Cir. 1990); *State ex rel. Thornburg v. Currency*, 324 N.C. 276, 378 S.E.2d 1 (1989).

> Important differences exist between *in rem* and *in personam* forfeiture. First, while *in personam* forfeiture requires a criminal conviction of the property's owner, an *in rem* proceeding only requires the government to prove that the property was used for an illegal purpose or that the property constitutes contraband. Second, the government bears a lower burden of proof in an *in rem* forfeiture action than it does in an *in personam* action. Since an *in personam* action is criminal, the government must prove the charges against the defendant beyond a reasonable doubt. In an *in rem* action, on the other hand, only proof by a preponderance of the evidence is required.

Craig W. Palm, *RICO Forfeiture and the Eighth Amendment: When is Everything Too Much?*, 53 U. Pitt. L. Rev. 1, 6-7 (1991); *see also,* Drew J. Fossum, Comment, *Criminal Forfeiture and the Attorney-Client Relationship: Are Attorneys' Fees up for Grabs?*, 39 Sw. L.J. 1067, 1069-72 (1986) (historical overview of forfeiture laws).

Criminal forfeiture, therefore, must follow criminal conviction. Because defendant was found not guilty of possessing cocaine with the intent to sell or deliver, the trial court was precluded from declaring the money recovered from defendant's person was subject to criminal forfeiture under G.S. § 90-112(a)(2).

Accordingly, the order of the trial court directing forfeiture "to the School Fund" of $460 seized from defendant is hereby vacated. As the question is not before us, we express no opinion regarding the trial court's authority to direct that defendant apply the monies at issue to payment of other monetary assessments properly imposed upon him.

No error in the trial; order of forfeiture vacated.

Judges JOHNSON and SMITH concur.