STATE OF NORTH CAROLINA v. JOHN JACOB MORTON

No. COA03-1150

(Filed 21 September 2004)

## 1. Evidence— hearsay—unavailable witness—right of confrontation

The trial court erred in a possession of stolen goods case by allowing inadmissible hearsay into evidence and the case is remanded for a new trial, because: (1) an unavailable witness's testimonial statements to a detective are inadmissible since defendant did not have a prior opportunity to cross-examine the unavailable witness regarding his statements and the admission of those statements during the trial was a violation of defendant's right to confrontation under the Sixth Amendment; and (2) as the State offered no evidence that defendant knew the items were stolen, in the absence of the unavailable witness's inadmissible statements, it cannot be concluded the error was harmless beyond a reasonable doubt.

## 2. Possession of Stolen Property— knowledge that goods were stolen—motion to dismiss—sufficiency of evidence

The trial court did not err in a possession of stolen goods case by denying defendant's motions to dismiss at the close of the State's evidence and at the close of all evidence even though defendant contends there was insufficient proof that he knew or had reasonable grounds to believe that the property in his possession was stolen, because: (1) although the only evidence produced by the State indicating that defendant knew the items were stolen came from inadmissible hearsay statements, such statements must be considered when reviewing the evidence on a motion to dismiss; and (2) the testimony tended to show that defendant knew he was purchasing stolen property, harassed the witness to obtain more, and loaned the witness the use of his van to haul the stolen property to his home.

STATE v. MORTON

[166 N.C. App. 477 (2004)]

Appeal by defendant from judgment entered 22 January 2003 by Judge Charles C. Lamm, Jr. in Yadkin County Superior Court. Heard in the Court of Appeals 7 June 2004.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General George W. Boylan, for the State.*

*Law Offices of J. Darren Byers, P.A., by J. Darren Byers, for defendant-appellant.*

HUNTER, Judge.

John Jacob Morton ("defendant") appeals from a judgment filed on 22 January 2003 consistent with a jury verdict finding him guilty of possession of stolen goods. Defendant was sentenced to eight to ten months incarceration. We conclude that the trial court erred in allowing inadmissible hearsay into evidence and remand the case for a new trial.

The evidence tends to show that in August 2001, Johnny Isenhour ("Isenhour") reported that about $20,000.00 worth of his stored tools, equipment and repair parts for vehicles and tractors were stolen from a garage owned by his mother-in-law in Catawba County. He had not visited the garage in approximately two weeks before he discovered his missing property and had not given anyone permission to take it. At the beginning of the investigation, Isenhour gave Catawba County Detective Doug Carter ("Detective Carter") a very detailed description of every item taken, including makes, colors, and any markings Isenhour had put on them. Within seven to ten days, Isenhour identified some of his property in Alexander County, recovered by the sheriff's department.

A couple of days later Detective Carter called Isenhour and told him that the Catawba County Sheriff's Department had discovered other items for him to identify in photographs. Isenhour identified and retrieved more of his tools.

Later, Detective Freddy Sloan ("Detective Sloan") was able to secure a search warrant for defendant's cargo trailer at Vintage Flea Market. Detective Sloan and other officers inventoried, numbered, and photographed 256 items from defendant's trailer. The items that were recovered from the trailer included tools. Detective Sloan contacted Isenhour, who identified some of the property as belonging to him.

STATE v. MORTON

[166 N.C. App. 477 (2004)]

Before the trial, the State filed notice that it intended to offer William Miller's ("Miller") and James Watters' ("Watters") statements into evidence because it was unable to procure their attendance by process or other reasonable means. Defendant filed two motions *in limine*. One motion requested that the court confine the scope of the trial to the events that constituted the indictable offense and not include investigations and actions of law enforcement, alleged victims or perpetrators in other jurisdictions since the Yadkin County investigator's reports revealed that there was a multi-county investigation surrounding stolen goods. That motion was granted. The other motion moved the court to prohibit the introduction of Miller's and Watters' written statements and it was not granted by the trial court.

At trial, Miller was present and testified. He had already pled guilty to breaking into Isenhour's garage. He was defendant's friend and a former friend of Watters. He testified that he and another friend, Wayne Probst, committed the crime. He stored Isenhour's property in a storage building rented by Watters. Further, Miller testified that he sold the stolen property to Watters, but he never took any property to defendant and did not know Watters was selling property to defendant.

Watters was not present during the trial. Detective Carter had interviewed Watters on 24 August 2001 at approximately 3:54 p.m. because he was a suspect in the investigation of the break-in. The trial court allowed Watters' statements to be read into evidence by Detective Carter. Again, defendant objected to the reading of it to the jury, but the trial court overruled the objection. During the interview, Watters said he sold stolen property to defendant and defendant knew that it was stolen. Defendant also allowed Watters to use his blue Astro van to haul stolen property from Watters' storage shed to defendant's home. Watters stated that Isenhour's stolen property was the first load of merchandise that he had taken to defendant. He further stated that defendant knew the merchandise was stolen and defendant kept harassing him about getting more of it.

Chasity Prather ("Prather") was the only witness for defendant. She was Watters' ex-wife and defendant's former employee. She testified that she had spoken to Watters the morning of the trial and she knew where he was, in Hickory, North Carolina. She also testified that she was present one time when defendant paid Watters for merchandise.

Defendant assigns error to (I) the trial court admitting Watters' statements into evidence when he was not actually unavailable, (II) the trial court not granting defendant's motions to dismiss because the State failed to show defendant's knowing possession of stolen goods, and (III) the trial court admitting evidence of criminal investigations of defendant in other counties.

I.

[1] Defendant first argues that the trial court erred in allowing the hearsay statements of Watters to be introduced into evidence. We agree. Watters' statements to Carter were inadmissible hearsay even if the witness was unavailable. The Confrontation Clause of the United States Constitution, as interpreted by *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004), provides "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68, 158 L. Ed. 2d at 203. It also provides that:

> Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee.

*Id.* at 61, 158 L. Ed. 2d at 199.

Here, *Crawford* applies because Watters' statements to Carter, a detective for a sheriff's department, were testimonial in nature. They were made during an interview at the Catawba County Sheriff's Department after Watters' *Miranda* rights were given. *Crawford* does not define "testimonial" but clearly held, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id.* at 68, 158 L. Ed. 2d at 203. "Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." *Id.* at 52, 158 L. Ed. 2d at 193.

Therefore, in the case now before us, we hold that Watters' statements to Carter are inadmissible because defendant did not have a prior opportunity to cross-examine Watters regarding his statements and that the admission of those statements during the

trial was a violation of defendant's right to confrontation under the Sixth Amendment.

"[W]here there is an alleged violation of the defendant's constitutional rights, the State has the burden of showing that the error was 'harmless beyond a reasonable doubt.' " *State v. Dunn,* 154 N.C. App. 1, 17-18, 571 S.E.2d 650, 661 (2002) (quoting N.C. Gen. Stat. § 15A-1443 (2001)).

The principles of due process of law require the State to prove beyond a reasonable doubt every essential element of the crime charged. *See State v. White,* 300 N.C. 494, 499, 268 S.E.2d 481, 485 (1980). The elements of the crime with which defendant is charged, possession of stolen property, are (I) possession of personal property, (II) worth more than $1,000.00, (III) which has been stolen, (IV) knowing or having reasonable grounds to believe the property was stolen, and (V) having possession for a dishonest purpose. N.C. Gen. Stat. § 14-17.1; *see also State v. Bailey,* 157 N.C. App. 80, 86, 577 S.E.2d 683, 688 (2003). As the State offered no evidence that defendant knew the items were stolen, in the absence of Watters' inadmissible statements, we cannot conclude the trial court's error was harmless beyond a reasonable doubt. We therefore grant a new trial.

II.

**[2]** Defendant next contends that the trial court erred in denying his motions to dismiss at the close of the State's evidence and at the close of all of the evidence because there was insufficient proof that he knew or had reasonable grounds to believe that the property in his possession was stolen. *See* N.C. Gen. Stat. § 14-71.1 (2003). We disagree.

In order to survive a motion to dismiss in a criminal action, the evidence must be "substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt,* 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). All evidence actually admitted, whether competent or not, must be viewed in the light most favorable to the State, drawing every reasonable inference in favor of the State. *See State v. Benson,* 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992); *State v. Jones,* 342 N.C. 523, 540, 467 S.E.2d 12, 23 (1996) (citing *State v. Vause,* 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991)). Whether the evidence presented is substantial is a question of law for the court. *State v. Stephens,* 244 N.C. 380, 384, 93 S.E.2d 431, 433 (1956). It is not a sufficient basis for granting a

motion to dismiss that some of the evidence was erroneously admitted by the trial court. *See Jones* at 540, 467 S.E.2d at 23.

Defendant contends there was insufficient evidence presented of the knowledge element of the crime, as the only evidence produced by the State indicating that defendant knew the items were stolen came from Watters' statements, read by Detective Carter. Although such statements were improperly admitted by the trial court, they must be considered when reviewing the evidence on a motion to dismiss.

Watters' testimony tended to show that defendant knew he was purchasing stolen property, harassed Watters to obtain more, and loaned Watters the use of his van to haul the stolen property to his home. We therefore conclude that substantial evidence was presented that supports the inference that defendant knew the items were stolen, and therefore the trial court did not err in denying defendant's motions to dismiss.

As the trial court erred in admitting Watters' hearsay testimony into evidence, and such an error was prejudicial to defendant, we therefore conclude defendant is entitled to a new trial.

The questions raised by defendant's additional assignment of error may not recur during a new trial and hence, will not be considered in this appeal.

New trial.

Chief Judge MARTIN and Judge TIMMONS-GOODSON concur.