STATE OF NORTH CAROLINA v. THADDEUS DEE JONES

No. COA11-22

(Filed 1 November 2011)

**1. Evidence—expert witness testimony—NarTest NXT 2000 results and reliability—cocaine—marijuana**

The trial court committed plain error by allowing two witnesses to testify as experts concerning the results and reliability of the NarTest NXT 2000 for the possession of cocaine charge, and defendant was entitled to a new trial. However, it was harmless error for the possession of marijuana, possession of marijuana with intent to sell and deliver, and sale of marijuana charges since other evidence was properly admitted to establish the identity of the substances.

**2. Constitutional Law—right to jury trial—consideration of defendant's failure to plead—length of trial—presumptive range sentence**

Defendant was denied his constitutional right to a jury trial in a drug case based on the trial court's consideration of defendant's failure to plead and the length of trial when it fashioned its judgment even though it was within the presumptive range. The case was remanded for resentencing.

**3. Costs—restitution—lab fees—unlicensed private lab**

The trial court erred by ordering defendant to pay $1,200 in restitution for lab fees paid to NarTest. N.C.G.S. § 7A-304 does not authorize restitution for analysis performed by an unlicensed private lab.

Appeal by defendant from judgments entered 10 June 2010 by Judge Kenneth F. Crow in Onslow County Superior Court. Heard in the Court of Appeals 17 August 2011.

*Attorney General Roy Cooper, by Assistant Attorney General John F. Oates, Jr., for the State.*

*Anne Bleyman for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Thaddeus Dee Jones appeals from the trial court's 10 June 2010 judgments entered after a jury found him guilty of the fol-

lowing crimes: (1) possession with intent to sell and deliver marijuana on 11 February 2009; (2) sale of marijuana on 11 February 2009; (3) possession of drug paraphernalia on 11 February 2009; (4) possession of marijuana on 12 February 2009; (5) possession of drug paraphernalia on 12 February 2009; and (6) possession with intent to sell and deliver cocaine on 12 February 2009.

Defendant argues that the trial court erred by: (1) allowing Captain John Lewis and expert witness H.T. Raney, Jr. to testify concerning the results and reliability of the NarTest NTX 2000 ("the NarTest"); (2) allowing visual identification of the marijuana and cocaine; (3) denying defendant's motion to dismiss; (4) ordering defendant to pay $1,200.00 in restitution for lab fees; and (5) punishing defendant for exercising his right to a trial by jury. After careful review, we order a new trial on the charge of possession with intent to sell and deliver cocaine, but we uphold the three convictions related to possession and sale of marijuana. Defendant makes no arguments concerning the possession of drug paraphernalia charges, therefore, those convictions stand. We vacate the $1,200.00 restitution award and remand for resentencing.

## Background

The State's evidence at trial tended to establish that on 11 February 2009, defendant sold approximately seven grams of marijuana to David Shepard, an Onslow County Sheriff's Department informant. Sergeant Ides testified that he gave Mr. Shepard the money to purchase the marijuana and then followed him to the location where the transaction was to take place. Mr. Shepard subsequently turned the marijuana over to Sergeant Ides. Defendant was not arrested at that time.

On 12 February 2009, defendant purchased cocaine from a woman known as "Cherry" at a local "pool hall." Sergeant Ides was conducting surveillance on defendant that evening, and, upon discovering that defendant was driving with a revoked license plate, Sergeant Ides stopped defendant's vehicle. When he approached the vehicle, Sergeant Ides saw defendant "pushing something" into the area between the seat and the center console. Sergeant Ides then performed a search of defendant's person and his vehicle. Defendant was in possession of approximately two and one-half grams of cocaine, which was packaged in four separate bags, approximately one gram of marijuana, drug paraphernalia, and a handgun. Defendant was arrested and later charged with drug related offenses that allegedly took place on 11 and 12 February 2009.

STATE v. JONES

[216 N.C. App. 519 (2011)]

Captain Lewis, who did not participate in defendant's arrest or the confiscation of suspected contraband, testified that he used the NarTest to test the substance defendant sold to Mr. Shepard on 11 February 2009, and the substances seized from defendant's car on 12 February 2009. Captain Lewis was accepted by the trial court as an expert witness "in the use of the NarTest NTX 2000 machine." According to Captain Lewis, the NarTest identified the substance sold to Mr. Shepard as marijuana and the substances seized from defendant's car as marijuana and cocaine. Captain Lewis sent the substances to Mr. Raney at NarTest, LLP ("NarTest") for confirmatory testing. Mr. Raney, who was previously employed by the State Bureau of Investigation ("SBI") and holds a degree in chemistry, was accepted as an expert witness in the field of forensic chemistry. Mr. Raney testified that he conducted chemical analyses on the substances in the same manner used by the SBI and that the results confirmed those of the NarTest. Mr. Raney testified extensively about his experience evaluating the NarTest and provided his expert opinion that the NarTest is, in fact, reliable.

Defendant testified at trial that he never sold marijuana to Mr. Shepard on 11 February 2009; however, defendant admitted that he purchased what he believed to be cocaine on 12 February 2009 for personal use. Defendant stated that he never intended to sell the cocaine.

As stated *supra*, defendant was convicted of various drug related offenses. With regard to the crimes that occurred on 11 February 2009, the trial court consolidated the possession with intent to sell and deliver marijuana and the sale of marijuana charges and sentenced defendant to six to eight months imprisonment. Defendant was sentenced to 45 days imprisonment for the possession of drug paraphernalia charge. With regard to the crimes that occurred on 12 February 2009, the trial court consolidated the possession of marijuana and the possession of drug paraphernalia charges and sentenced defendant to 45 days imprisonment. Defendant was sentenced to six to eight months imprisonment for the possession with intent to sell and deliver cocaine charge. Defendant gave notice of appeal in open court.

Discussion

I.  The NarTest Results and Visual Identification

[1] Defendant argues that the trial court committed plain error by allowing Captain Lewis and Mr. Raney to testify as experts concerning the use and reliability of the NarTest, and by admitting the results

generated by this machine. "Plain error is error so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Leyva*, 181 N.C. App. 491, 499, 640 S.E.2d 394, 399 (citation and quotation marks omitted), *disc. review denied and appeal dismissed*, 361 N.C. 573, 651 S.E.2d 370 (2007). Prior to determining whether admission of this evidence constituted plain error, we must first determine whether it was error at all.

As for Captain Lewis' and Mr. Raney's expert testimony concerning the use and reliability of the NarTest, "a trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004). Rule 702(a) of the North Carolina Rules of Evidence provides that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2009).[1]

Our Supreme Court has analyzed Rule 702 and set forth the following three-step analysis for determining whether expert opinion testimony is admissible: "(1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an expert in that area of testimony? (3) Is the expert's testimony relevant?" *Howerton*, 358 N.C. at 458, 597 S.E.2d at 686. In the present case, defendant strictly argues that the first prong of this test was not met because the NarTest is not sufficiently reliable as an area for expert testimony.

With regard to the first prong, "when specific precedent justifies recognition of an *established* scientific theory or technique advanced by an expert, the trial court should favor its admissibility, provided the other requirements of admissibility are likewise satisfied." *Id.* at 459, 597 S.E.2d at 687 (emphasis added).

Where, however, the trial court is *without precedential guidance or faced with novel scientific theories, unestablished techniques,* or compelling new perspectives on otherwise settled theories or

---

1. The General Assembly recently amended Rule 702(a). 2011 N.C. Sess. Law ch. 283, § 1.3 (effective Oct. 1, 2011). The amended statute only applies to actions commenced on or after 1 October 2011, and, consequently, the amended version is not applicable to this case. *Id.*

techniques, a different approach is required. Here, the trial court should generally focus on the following nonexclusive indices of reliability to determine whether the expert's proffered scientific or technical method of proof is sufficiently reliable: the expert's use of established techniques, the expert's professional background in the field, the use of visual aids before the jury so that the jury is not asked to sacrifice its independence by accepting the scientific hypotheses on faith, and independent research conducted by the expert.

Within this general framework, reliability is thus a preliminary, foundational inquiry into the basic methodological adequacy of an area of expert testimony. This assessment does not, however, go so far as to require the expert's testimony to be proven conclusively reliable or indisputably valid before it can be admitted into evidence.

*Id.* at 460, 597 S.E.2d at 687 (emphasis added) (citation, quotation marks, and brackets omitted).

This Court previously determined that the NarTest was a "new technology[,]" applied the *Howerton* test, and held that admission of Captain Lewis' testimony concerning the use of the NarTest and its results in that case was prejudicial error. *State v. Meadows*, 201 N.C. App. 707, 713, 687 S.E.2d 305, 309, *disc. review denied and appeal dismissed*, 364 N.C. 245, 699 S.E.2d 640 (2010). There, Captain Lewis testified regarding his personal experience with the NarTest; however, he did not testify as to whether the NarTest had been recognized by experts in the field of chemical analysis as a reliable method of testing, nor did he compare the NarTest to other testing methods currently used to identify controlled substances. *Id.* at 710, 687 S.E.2d at 307. Moreover, while Captain Lewis had been trained to operate the NarTest, he had no "professional background in the field of chemical analysis of controlled substances." *Id.* at 711, 687 S.E.2d at 308 (citation and quotation marks omitted). Additionally, Captain Lewis did not testify as to any independent research he had conducted, nor did he supplement his testimony with a visual aid. *Id.* at 712, 687 S.E.2d at 308.

In reaching its holding in *Meadows*, this Court reasoned: "As the State failed to proffer evidence to support any of the 'indices of reliability' under *Howerton* or any alternative indicia of reliability, we conclude that 'the expert's proffered method of proof [is not] sufficiently reliable as an area for expert testimony[.]' " *Id.* at 712, 687 S.E.2d at 308 (quoting *Howerton*, 358 N.C. at 458–60, 597 S.E.2d at

686–87). In the case *sub judice*, Detective Lewis testified in a manner consistent with his testimony in *Meadows*; consequently, we must hold that his testimony was likewise erroneously admitted in this case. We now address whether Mr. Raney's testimony concerning the reliability of the NarTest was properly admitted.

Mr. Raney has a bachelor's degree in chemistry and worked as a forensic chemist with the SBI for 25 years. Mr. Raney began working for NarTest in 2004 and was asked by the company to "review and see if [the NarTest] had any potential in the law enforcement field." At trial, Mr. Raney explained to the jury that the NarTest operates using "fluorescent based [t]echnologies" and described in detail how this technology is used to identify contraband. The jury was then shown a DVD created by NarTest that reiterated the explanation provided by Mr. Raney. Mr. Raney testified that, while working for NarTest, he has used SBI chemical analysis protocol to test 3,491 contraband samples that were also tested by the NarTest, and that the error rate of the NarTest is 0.17%. Mr. Raney provided his opinion that the NarTest is a reliable method for identifying contraband. He went so far as to say that the NarTest "[p]robably [has a] higher accuracy rate than most scientific equipment." Mr. Raney further testified that he used SBI testing protocol in the present case to perform comparison tests on the contraband seized from defendant and tested by Captain Lewis using the NarTest. The results generated by Mr. Raney's tests were the same as those produced by the NarTest.

While it is undisputed that Mr. Raney's background in forensic chemistry is sufficient to qualify him as an expert in that field, his "remarkable credentials . . . presents a particularly compelling need to halt his testimony when it is based on an insufficient method of proof." *State v. Ward*, 364 N.C. 133, 146, 694 S.E.2d 738, 746 (2010). "The concern . . . is that jurors may ascribe so much authority to such a noteworthy expert in forensic chemistry that they treat his testimony as infallible . . . ." *Id.* Despite Mr. Raney's qualifications, we must carefully examine whether the "proffered method of proof [was] sufficiently reliable as an area for expert testimony[.]" *Howerton*, 358 N.C. at 458, 597 S.E.2d at 686. In examining the indices of reliability set forth in *Howerton*, we hold that Mr. Raney's testimony was inadmissible.

Undoubtedly, Mr. Raney's expertise and comparison testing cures *some* of the defects that were present in Captain Lewis' testimony. The trial court aptly recognized that "the State [wa]s trying to comply with the language in the *Meadows* case" by offering the testimony of Mr. Raney. Still, as in *Meadows*, 201 N.C. App. at 709, 687 S.E.2d at

307, "[w]e are not aware of any cases in which the NarTest has been recognized as an accepted method of analysis or identification of controlled substances in North Carolina or in any other jurisdiction in the United States." Mr. Raney admitted that the NarTest had not been licensed or certified by the Department of Health and Human Services ("DHHS"), or any other agency or department of the State. We find this factor to be the most relevant in our analysis, but we have considered other factors as well, such as the fact that Mr. Raney had not conducted any independent research on the NarTest machine outside of his duties as a NarTest employee. Moreover, the State did not present any evidence that the NarTest machine had been recognized as a reliable method of testing by experts, other than Mr. Raney, in the field of chemical analysis of controlled substances. The State did not point to any publications or research performed by anyone not associated with NarTest. Furthermore, while the State did produce a visual aid to support Mr. Raney's testimony, that aid was no more than a promotional video created by NarTest. In sum, Mr. Raney's professional background and comparison testing provides some indicia of reliability; however, for the foregoing reasons, we are not persuaded that "the expert's proffered method of proof [was] sufficiently reliable as an area for expert testimony[.]" *Howerton*, 358 N.C. at 458, 597 S.E.2d at 686. Consequently, we hold that Mr. Raney's expert testimony was not properly admitted in this case.

Because Captain Lewis' and Mr. Raney's respective testimonies were inadmissible, we hold that the results of the NarTest were likewise inadmissible. *Meadows*, 201 N.C. App. at 712, 687 S.E.2d at 309. We must now determine whether admitting the NarTest results rose to the level of plain error. If other evidence was properly admitted establishing the identity of the controlled substances, we would be inclined to hold that admission of the NarTest results was not plain error. *See State v. Wright*, ___ N.C. App. ___, ___, 708 S.E.2d 112, 122 ("Based on the record, we find Defendant has failed to show plain error. Contrary to Defendant's argument, there was other evidence" that defendant committed the crime charged.), *disc. review denied*, ___ N.C. ___, 710 S.E.2d 9 (2011).

Besides the results of the NarTest machine, the State presented evidence that Mr. Raney tested the substances in the laboratory at NarTest using SBI testing protocol. Mr. Raney testified that the substances seized from defendant were cocaine and marijuana. This Court recently held that such evidence was admissible. *State v. McDonald*, ___ N.C. App. ___, ___, ___, S.E.2d ___, ___ (Oct. 4, 2011)

(No. 11-104). In *McDonald*, the State did not attempt to admit the results of the NarTest machine, only the testimony and lab report of Mr. Raney. *Id*. at ___, ___ S.E.2d at ___. The key distinction between *McDonald* and the present case, however, is that in *McDonald*, Mr. Raney testified that the NarTest *lab* was licensed by DHHS and the Drug Enforcement Agency. *Id*. at ___, ___ S.E.2d at ___. The *McDonald* Court determined that the licensure evidence was dispositive and held that the lab results were admissible to prove that the defendant possessed cocaine. *Id*. at ___, ___ S.E.2d at ___. Here, Mr. Raney testified that the lab was not licensed or accredited by any agency.[2] Consequently, Mr. Raney's lab results were improperly admitted, and, therefore, do not render the erroneous admission of the NarTest results harmless.

The State also offered visual identification of the cocaine and marijuana. Defendant argues that this visual identification was erroneously admitted. Sergeant Ides testified that, pursuant to his training and experience, the substance defendant allegedly sold to Mr. Shepard on 11 February 2009 was marijuana, and the substances seized from defendant on 12 February 2009 were cocaine and marijuana. Our Supreme Court has held that "scientifically valid chemical analysis [, rather than visual inspection,] is required" to identify controlled substances that are defined in terms of their chemical composition. *Ward*, 364 N.C. at 147, 694 S.E.2d at 747. Consequently, Sergeant Ides should not have been permitted to visually identify the cocaine seized from defendant.[3] *Id*.

However, our case law provides that an officer may testify that the contraband seized was marijuana based on visual inspection alone. *State v. Ferguson*, ___ N.C. App. ___, ___, 694 S.E.2d 470, 475 (2010); *State v. Fletcher*, 92 N.C. App. 50, 56, 373 S.E.2d 681, 685 (1988). According to *Ferguson*, ___ N.C. App. at ___, 694 S.E.2d at 475, *Ward* did not "cast[] any doubt on the continued vitality of *Fletcher*." Consequently, we hold that Sergeant Ides was properly permitted to testify that the substance defendant sold to Mr. Shepard on 11 February 2009 was marijuana, and that the substance defendant possessed on 12 February 2009 was also marijuana.

In sum, as for the possession of cocaine charge, there was no evidence properly admitted at trial that would render the results of the

---

2. The defendant's trial in *McDonald* took place after the trial in the present case.

3. Defendant's statement that he bought what he believed to be cocaine was also insufficient to identify the substance. *State v. Williams*, ___ N.C. App. ___, ___, 702 S.E.2d 233, 238, *temporary stay allowed*, ___ N.C. ___, 705 S.E.2d 382 (2010).

NarTest harmless. We hold that the admission of those results constituted plain error because the jury would certainly have reached a different result absent those results. Defendant is entitled to a new trial on that charge. As for the possession of marijuana, possession of marijuana with intent to sell and deliver, and sale of marijuana charges, Sergeant Ides' testimony was sufficient to render the admission of the NarTest results harmless, and, therefore, we uphold those convictions.[4]

## II. Right to a Jury Trial

[2] Next, defendant argues that he was denied his constitutional right to a jury trial. Specifically, defendant contends that the sentence imposed by the trial court was based, in part, on defendant's decision not to plead guilty. We agree.

> A sentence within statutory limits is presumed to be regular. Where the record, however, reveals the trial court considered an improper matter in determining the severity of the sentence, the presumption of regularity is overcome. It is improper for the trial court, in sentencing a defendant, to consider the defendant's decision to insist on a jury trial. Where it can be reasonably inferred the sentence imposed on a defendant was based, even in part, on the defendant's insistence on a jury trial, the defendant is entitled to a new sentencing hearing.

*State v. Peterson*, 154 N.C. App. 515, 517, 571 S.E.2d 883, 885 (2002) (internal citations and quotation marks omitted).

At the sentencing hearing in this case, the trial court noted more than once that defendant "was given an opportunity to plead guilty[,]" and that such failure to plead was one of the "factors that the Court considers when the Court fashions judgment." At sentencing, the Court also admonished defendant and his counsel for "unnecessarily" protracting the trial for six days when, in the court's opinion, the trial should have only taken two days. Viewed in context, it appears that the trial court wished to punish defendant for going to trial and for the length of the trial.

We recognize that the trial court sentenced defendant within the presumptive range, and consolidated two of the misdemeanor counts

---

4. We need not address defendant's argument that the trial court erred in denying his motion to dismiss the charges against him. Defendant bases his argument exclusively on the improperly admitted NarTest evidence. "It is not a sufficient basis for granting a motion to dismiss that some of the evidence was erroneously admitted by the trial court." *State v. Morton*, 166 N.C. App. 477, 481-82, 601 S.E.2d 873, 876 (2004).

and two of the felony counts. Nevertheless, the trial court considered defendant's failure to plead, and the length of the trial, when it fashioned its judgment, and, therefore, we must remand this case for resentencing. *Id.*

## III. Restitution

**[3]** Finally, defendant argues that the trial court erred in ordering defendant to pay the Onslow County Sheriff's Department $1,200.00 as restitution for the lab fees paid to NarTest. The State concedes that it did not present sufficient evidence to support the ordered restitution and requests a new hearing on the matter. There is no need for a new hearing because we hold that this type of restitution is not permitted by our General Statutes and should not have been imposed.

"At common law, costs in criminal cases were unknown; liability for costs in criminal cases is therefore dictated purely by statute." *State v. Johnson*, 124 N.C. App. 462, 470, 478 S.E.2d 16, 21 (1996), *cert. denied*, 345 N.C. 758, 485 S.E.2d 304 (1997). N.C. Gen. Stat. § 7A-304(a)(7) (2009) states that the trial court "shall" order restitution in the amount of $600.00 for analysis of a controlled substance by the SBI. N.C. Gen. Stat. § 7A-304(a)(8) allows the same restitution if a "crime laboratory facility operated by a local government" performs an analysis of a controlled substance so long as the "work performed at the local government's laboratory is the equivalent of the same kind of work performed by the [SBI]." N.C. Gen. Stat. § 7A-304 does *not* authorize restitution for analysis performed by an unlicensed private lab such as NarTest. Accordingly, we vacate the $1,200.00 restitution award.[5]

## Conclusion

Based on the foregoing, we hold that admission of the NarTest results which stated that the substance possessed by defendant on 12 February 2009 was cocaine constituted plain error; however, we hold that admission of the NarTest results which stated that the substances possessed by defendant on 11 and 12 February 2009 were marijuana did not constitute plain error because other evidence was properly admitted to establish the identity of the substances. We further hold that the trial court improperly considered defendant's failure to plead, and the length of the trial, during sentencing. Addition-

---

5. The trial court also ordered defendant to reimburse the State for the $30.00 used to purchase the marijuana from defendant on 11 February 2009. Defendant does not contend that this portion of the restitution award was improper.

ally, we hold that the trial court improperly ordered defendant to pay restitution in the amount of $1,200.00.

New trial in part; no prejudicial error in part; remand for resentencing; restitution award vacated in part.

Judges STROUD and HUNTER, Robert N., Jr. concur.