IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-447

Filed: 19 December 2017

Carteret County, No. 14 CVS 421

JOSEPH P. MCVICKER and wife, SUSAN MCVICKER, Plaintiffs,

v.

BOGUE SOUND YACHT CLUB, INC., Defendant.

Appeal by plaintiffs from order entered 4 March 2016 by Judge Benjamin G. Alford in Carteret County Superior Court. Heard in the Court of Appeals 4 October 2017.

> *Harvell and Collins, P.A., by Russell C. Alexander and Wesley A. Collins, for plaintiff-appellants.*

> *Parker Poe Adams & Bernstein LLP, by Michael J. Crook, for defendant-appellee.*

TYSON, Judge.

Joseph and Susan McVicker ("Plaintiffs") appeal from the trial court's order granting summary judgment to the Bogue Sound Yacht Club, Inc. ("Defendant" or "the Association"). We reverse the trial court's order and remand to the trial court for entry of summary judgment in favor of Plaintiffs.

## I. Background

Defendant is a non-profit corporation, which operates the homeowners' association for the Bogue Sound Yacht Club subdivision located in Carteret County.

Plaintiffs are lot owners within the subdivision. The subdivision is subject to the Amendment of Declaration of Covenants, Restrictions, and Easements of Bogue Sound Yacht Club.

In October 2013, Plaintiffs hired independent contractors to cut trees and clear brush on their property in order to maintain the lot's appearance and to prevent overgrowth. Plaintiffs did not believe they were required to seek approval of the Architectural Control Committee prior to beginning this work to remove trees and clear brush on their lot and did not do so. Before work on the property was completed, Defendant sent Plaintiffs a "Notice of [Architectural Control Committee] Violation" demanding Plaintiffs stop clearing trees on their property "until the proper . . . application form and $250 Refundable Construction Bond has been submitted for approval." However, with crews already on site and nearly finished, Plaintiffs continued the work and completed it the following day.

Plaintiffs eventually offered to submit the application, but refused to pay the requested $250 bond on the grounds such bond was not authorized either by the Covenants or applicable law. Defendant refused to accept Plaintiffs' application without the $250 bond and sent Plaintiffs notice of a hearing. The hearing notice alleged Plaintiffs' noncompliance with Association standards by clearing trees without following Defendant's purportedly required procedure. The hearing notice also notified Plaintiffs of a hearing to be held on 4 November 2013 before the board

of directors, in order to determine whether the Association should impose a fine on Plaintiffs. The hearing notice invited Plaintiffs to be heard on the matter by attending the hearing in person or submitting a written response; Plaintiffs opted to attend the hearing.

On 17 November, Defendant mailed Plaintiffs written notice of the Association's decision to allow a seven-day period for Plaintiffs to submit the application and construction bond. The notice indicated Plaintiffs' failure to comply within seven days would result in imposition of a fine of one hundred dollars per day for thirty days. On or about 10 December 2013, Plaintiffs submitted the $250 bond, under protest, along with the required application. Defendant retroactively approved Plaintiffs' application and returned the $250 bond in full. Yet, because the bond was purportedly not submitted within the seven-day period, Defendant assessed $1,400 in fines. Defendant subsequently reduced the fines by twenty-five percent, to $1,050.

On 15 April 2014, Plaintiffs filed a verified complaint alleging two claims for declaratory relief and a claim for breach of fiduciary duty. Plaintiffs sought a declaration that: (1) Defendant failed to comply with requirements of the North Carolina Planned Community Act pertaining to the imposition of fines; and (2) Defendant is without authority to impose the construction bond. Additionally, Plaintiffs claimed Defendant had breached a fiduciary duty owed to Plaintiffs and

other members of the Association by selectively enforcing covenants and "failing to evenly, uniformly, fairly and equitably apply the Covenants to its members."

Defendant answered the complaint on 18 June 2014, and both parties moved for partial summary judgment. In Defendant's motion, Defendant contended pursuant to the Covenants and bylaws of Bogue Sound Yacht Club, Defendant "is empowered and required to maintain, keep up, and supervise the use and condition of the common areas in the subdivision" and to "regulate the use and maintenance of the properties within the subdivision through the rules and regulations promulgated by its Board of Directors through its Architectural Control Committee." Defendant claimed "[i]n furtherance of these rights and responsibilities, [Defendant] . . . requires that homeowners submit an application containing plans and specifications for work that may impact property values, other structures, natural vegetation, topography, [and] privacy . . . ." Part of this application process purportedly includes the power to additionally require a $250 construction bond. Defendant attached Plaintiff Joseph P. McVicker's deposition to support its motion.

In support of their motion, Plaintiffs argued they were entitled to judgment as a matter of law, because the Covenants "contain no authority for the imposition of such a bond" and because Defendant is without authority to impose the bond, the failure to post the bond cannot serve as a basis for imposing a fine. Plaintiffs further

asserted Defendant failed to give legally sufficient notice of the charge, as required by North Carolina law.

The trial court heard the parties on their motions for partial summary judgment on 1 February 2016. On 4 March 2016, the court entered a written order granting Defendant's motion for partial summary judgment, denying Plaintiffs' motion, and dismissing with prejudice Plaintiffs' claims for declaratory relief. On 9 March 2016, Plaintiffs gave notice of appeal to this Court. In an opinion filed 6 December 2016, this Court dismissed Plaintiffs' appeal as interlocutory. *McVicker v. Bogue Sound Yacht Club, Inc.*, __ N.C. App. __, 794 S.E.2d 560, 2016 WL 7100634 (unpublished). Plaintiffs subsequently dismissed their third claim for relief entitled "Breach of Fiduciary Duty and Selective Enforcement." Plaintiffs then filed their second notice of appeal to this Court on 10 March 2017.

## II. Jurisdiction

Plaintiffs' appeal from the superior court's final order lies of right to this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2015).

## III. Issues

Plaintiffs contend the trial court erred in granting summary judgment to Defendant on the issues of: (1) Defendant's authority to require a bond be submitted with a request for approval to Defendant prior to alterations, improvements or construction on Plaintiffs' lot; and (2) Defendant's imposition of a fine upon Plaintiffs.

## IV. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015); *see Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 737 (2003) (citation omitted), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004). "An issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citations and internal quotation marks omitted).

In reviewing a motion for summary judgment, the trial court must "view the pleadings and all other evidence in the record in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor." *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182, 711 S.E.2d 114, 117 (2011) (citation omitted). This Court reviews a trial court's summary judgment order *de novo*. *Sturgill v. Ashe Mem'l Hosp., Inc.*, 186 N.C. App. 624, 626, 652 S.E.2d 302, 304 (2007), *disc. review denied*, 362 N.C. 180, 658 S.E.2d 662 (2008).

## V. Analysis

Plaintiffs argue the trial court erred in granting summary judgment in favor of Defendant, because Defendant is not authorized to impose the construction bond and because Defendant failed to follow the North Carolina Planned Community Act (the "PCA") in imposing fines upon Plaintiffs. We agree.

A. *Mootness*

We first address our dissenting colleague's contention that Plaintiffs' challenge to Defendant's authority under the Amendment of Declaration of Covenants, Restrictions, and Easements of Bogue Sound Yacht Club (the "Covenants") to impose the $250 construction bond is moot.

"A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Roberts v. Madison Cty. Realtors Ass'n, Inc.*, 344 N.C. 394, 398-99, 474 S.E.2d 783, 787 (1996) (citation omitted). "A case is not moot where there is a sufficient real or immediate interest evidencing an existing controversy[.]" *Guilford Cty. Dep't of Emergency Servs. v. Seaboard Chem. Corp.*, 114 N.C. App. 1, 13, 441 S.E.2d 177, 184 (citations and internal quotation marks omitted), *disc. review denied*, 336 N.C. 604, 447 S.E.2d 390 (1994). This Court has also previously held that "cases which are technically moot may be considered if they are 'capable of repetition yet evading review.'" *Ballard v. Weast*, 121 N.C. App. 391, 394, 465 S.E.2d 565, 568 (citation and quotation marks omitted), *disc. review denied*, 343 N.C. 304, 471 S.E.2d 66 (1996).

Our dissenting colleague attempts to separate and not address or rule upon Defendant's authority to require a bond from Plaintiffs from Defendant's power under the PCA to assess fines for Plaintiffs' failure to post the bond. The issue of Defendant's authority to require a construction bond with an application is necessarily intertwined and has a "practical effect" upon the issue of Defendant's power to fine Plaintiffs $1,400 for not initially posting the bond as part of the Plaintiffs' application. *Roberts*, 344 N.C. at 398-99, 474 S.E.2d at 787.

We view the allegations in the pleadings in the light most favorable to Plaintiffs. Plaintiffs initially submitted their application for approval to remove trees and brush from their own yard, but did not submit the $250 bond because they did not believe they were required to under the Covenants. Defendant refused to accept Plaintiffs' application for approval without Plaintiff additionally posting the $250 construction bond. Defendant fined Plaintiffs based upon its own refusal to accept Plaintiffs' architectural review application without the additional $250 bond.

Plaintiffs' argue the Covenants do not expressly authorize Defendant to require a bond with a submission of an architectural review application, and they refused to submit the construction bond. To determine whether Defendant possessed the authority to impose a fine for Plaintiffs' refusal to post a bond, necessarily requires us to resolve the controversy of whether the Covenants expressly authorize

Defendant to require applicants to post a construction bond with their application. *See Roberts*, 344 N.C. 394, 398-99, 474 S.E.2d 783, 787.

Defendant's authority to require a bond directly bears upon Defendant's power to impose the contested fine upon Plaintiffs, and is not moot. Even were we to agree that the return of the bond mooted Plaintiff's claims, this issue remains properly before us, as "cases which are technically moot may be considered if they are 'capable of repetition yet evading review.'" *Ballard* 121 N.C. App. at 394, 465 S.E.2d at 568; *see also Cumberland Cty. Hosp. Sys., Inc. v. N.C. Dep't of Health & Human Sers.*, 242 N.C. App. 524, 530, 776 S.E.2d 329, 334 (2015) ("[W]e are not required to find that a future dispute will involve the exact same parties and circumstances before applying the exception [to mootness.]").

## B. *The Covenants*

Plaintiffs argue the Covenants do not authorize Defendant to require a construction bond be posted with an approval application. Defendant asserts the following Covenants provide authority to require Plaintiffs to post a bond with submission of an approval application. Although not raised by the parties, we presume, without deciding, for the purpose of analyzing the bond requirement that Defendant has the authority to require an approval application for lot owners conducting yard maintenance upon their own property.

The Covenants provide, in part:

ARTICLE 4 (COMMON AREAS)

2. Easements.   Every Owner shall have a right and easement of enjoyment in and to the Common Areas, on a nonexclusive basis, which right and easement shall be appurtenant in and shall pass with the title to every Lot; provided, however, the easements created hereunder shall be subject to the following:

(a) the right of the Association to establish reasonable rules and to charge reasonable fees for the use of the Common Areas, any such fees being charged being for the cost of maintenance, upkeep, and supervision of said Common Area;

. . . .

ARTICLE     6     (ARCHITECTURAL     CONTROL COMMITTEE)

. . . .

3. Procedure. Two copies of the complete set of plans and specifications, including landscape plans, describing any improvement, alteration, repair, or other item requiring approval of the Committee, shall be submitted to the Committee, at the place of address designated by the Association.   The Committee shall either approve or disapprove the proposed work in writing within twenty (20) days of the receipt of said plans and specifications.   If the Committee disapproves the proposed work, the Committee shall state its reasons for such disapproval in the written notification.   In the event the Committee fails to approve or disapprove in writing any proposed work within said twenty (20) day period approval shall be deemed granted. An applicant shall have the right to appeal an adverse Committee decision to the Board of Directors of the Association who may reverse or modify such decision by a two-thirds vote of the directors present at a duly called meeting.

4. <u>Required Approval.</u> No improvements, alterations, repairs, or excavations, nor any maintenance which requires or would result in a change in appearance (such as a change of color), or any other activity which would noticeabl[y] and visibly change the exterior appearance of a house or a Lot, or of any improvement located thereon, shall be made or done without the prior approval of the Committee. No building, fence, wall, residence or other structure shall be commenced, erected, maintained, improved, altered, or otherwise modified without the prior approval of the Committee, upon compliance with the procedures for approval as set out in subparagraph 3 of this Article 7.

The Covenants also state, in pertinent part:

ARTICLE 15 (BUILDING RESTRICTIONS)

. . . .

5. <u>Damage to Common Properties.</u> Each Owner shall be an insurer on behalf of their employees, contractors, subcontractors, and material suppliers, to the Association, for any damage to roads or to any other Common Areas caused by the passage of vehicles and equipment over the roads in the subdivision, or by any other activity associated with construction on Lots within the subdivision. In the event of such damage, the Association shall have the authority to repair such damage and assess the cost of such repairs to the Owner, which assessment shall become a lien on the property, just as other assessments are a lien, as set out in Article 7 of this Amended Declaration.

Over sixty-three years ago, the Supreme Court of North Carolina set forth and has since re-affirmed how courts are to review and construe restrictive covenants: "[R]estrictive covenants clearly expressed may not be enlarged by implication or

extended by construction.  They must be given effect and enforced as written."
*Callaham v. Arenson*, 239 N.C. 619, 625, 80 S.E.2d 619, 624 (1954).  "North Carolina
follows the rule of strict construction when interpreting restrictive covenants.  That
is, any ambiguities will be resolved in favor of unrestricted use.  But this rule must
not be applied to defeat the plain and obvious purposes of the restriction." *Barber v.
Dixon*, 62 N.C. App. 455, 457, 302 S.E.2d 915, 916-17 (1983) (citing *Long v. Branham*,
271 N.C. 264, 268, 156 S.E.2d 235, 239 (1967)).  "[E]ach part of the covenant must be
given effect according to the natural meaning of the words . . . ." *J.T. Hobby & Son,
Inc. v. Family Homes of Wake Cty.*, 302 N.C. 64, 71, 274 S.E.2d 174, 179 (1981).

> [I]n interpreting restrictive covenants, *doubt and
> ambiguity are resolved in favor of the unrestricted use of
> property*, so that where the language of
> a restrictive covenant is capable of two constructions, *the
> one that limits, rather than the one which extends it, should
> be adopted,* and that construction should be embraced
> which least restricts the free use of the land.

*Hultquist v. Morrow*, 169 N.C. App. 579, 584-85, 610 S.E.2d 288, 292 (emphasis
supplied) (citations and quotation marks omitted), *disc. review denied*, 359 N.C. 631,
616 S.E.2d 235 (2005).

Defendant is a planned community created before 1 January 1999 and is
therefore subject to particular sections of the PCA. *See Wise v. Harrington Grove
Cmty. Ass'n, Inc.*, 357 N.C. 396, 399-400, 584 S.E.2d 731, 735 (2003).  The PCA allows
property owners' associations to "(6) [r]egulate the use, maintenance, repair,

replacement, and modification of common elements[,]" and to "(17) [e]xercise any other powers necessary and proper for the governance and operation of the association." N.C. Gen. Stat. § 47F-3-102(6), (17) (2015). "Unless the articles of incorporation or the declaration expressly provides to the contrary, the [homeowners'] association may" exercise these powers. N.C. Gen. Stat. § 47F-3-102.

Defendant asserts it possesses authority to impose a bond requirement with the submission of an application for approval under its right "to establish reasonable rules and to charge reasonable fees for the use of the Common Areas. . ." under the Covenants. The Covenants expressly authorize Defendant to "charge reasonable *fees for the use* of the Common Areas[,]" but not to impose a bond as part of the approval process to conduct maintenance or improvements upon a lot owner's own property.

No express language in the Covenants or the PCA grants Defendant the authority to additionally require a bond to be submitted with a request for approval of activities on an owner's lot, not part of any common area. Defendant cannot assert this power by implication. *See Callaham*, 239 N.C. at 625, 80 S.E.2d at 624. Construing the Covenants strictly, as this Court is required to do, Defendant does not have the express or implied authority to additionally require Plaintiffs to post a bond as a condition to consider their application for approval. *See Long*, 271 N.C. at 268, 156 S.E.2d at 239.

The Covenants expressly set out the requirements for what Plaintiffs must submit with a request for approval to the Architecture Control Committee: "Two copies of the complete set of plans and specifications, including landscape plans, describing any improvements, alteration, repair, or other item requiring approval of the Committee, shall be submitted to the Committee[.]" Nothing in the Covenants' specified procedure indicates, implies, or requires the additional requirement of a bond to be posted.

The Covenants also specifically provide that, in the event of damage to the Common Areas, "caused by any other activity associated with construction on Lots within the subdivision . . . [the Association] shall have the authority to repair such damage and assess the cost of such repairs to the Owner[.]"

While not before us here, Plaintiffs' cutting and removal of trees upon their own property might arguably come within the ambit of "any other activity associated with construction[.]" The Covenants expressly provide the procedure for Defendant to assess costs for any damage to the Common Areas caused by "activity associated with construction on Lots within the subdivision[.]" It does not appear in the record that Plaintiffs were doing construction on their lot or preparing for construction.

Although the Covenants expressly allow Defendant to charge "reasonable fees for the use of the Common Areas, any such fees being charged being for the purpose of reimbursing the Association for the cost of maintenance, upkeep, and supervision

of said Common Areas[,]" the Covenants expressly require only the submission of plans and specifications to the Architectural Review Committee, and do not additionally require posting a bond. "[R]estrictive covenants clearly expressed may not be enlarged by implication or extended by construction.*" Callaham*, 239 N.C. at 625, 80 S.E.2d at 624.

Additionally, the Covenants specifically provide that in the event of damage to the Common Areas caused by "activity associated with construction on Lots within the subdivision," Defendant is to first repair the damage and then assess the lot owner. The requirements of the Covenants can "not be enlarged by implication" to additionally require Plaintiffs to post a bond to pay for potential damage to the Common Areas, when the Covenants expressly provide a procedure by which Defendant may repair and assess the costs of damage to the Common Areas caused by approved activity on the owner's lot. *See id.* Defendant possesses no express or implied authority under the Covenants to additionally require Plaintiff to post a bond with their application for approval. The superior court's order to the contrary is erroneous.

## C. *The Fine*

Plaintiffs contend the Defendant's imposition of a fine for failure to pay the $250 bond is improper because the bond requirement is void, and Defendant failed to follow the requirements of the PCA for imposing a fine. We agree.

Our dissenting colleague would decline to address whether Defendant has the authority to impose the fine, because Plaintiffs did not ask the trial court to decide whether the Association had the authority to impose fines in their complaint. However, Plaintiffs specifically alleged in their claim for declaratory relief under the PCA:

> 21. Upon information and belief, *Defendant failed to comply with the requirements of the North Carolina Planned Community Act pertaining to the procedure for the imposition of fines* and related matters.
>
> [And]
>
> 22. The attempt of BSYC [Defendant] to impose a fine upon Plaintiffs is void due *to failure to comply with the statutory requirements for the imposition of fines.* (emphasis supplied).

Instead of addressing Defendant's authority to assess a fine for Plaintiffs' initial refusal to pay an unenforceable bond, our dissenting colleague expounds at length on the issue of whether Defendant followed proper procedure under the PCA before imposing the fine. Our dissenting colleague quotes Plaintiffs' brief in an attempt to bolster the notion that the only issue before us regarding the fine is whether Defendant followed proper procedure in imposing it, as follows: "Specifically, the issue before this Court is whether the notice of hearing issued by the Association was sufficient to put the Plaintiff-Appellants on 'notice of the charge,' as required by G.S. 47F-3-107.1." However, this selective quotation ignores Plaintiffs' later

contention in their brief that, "[s]ince the purported obligation to pay the $250.00 construction bond is void and fails as a matter of law, the requirement that a fine be imposed for a violation of the Covenants is not satisfied under G.S. 47F-3-102(12), and the fine is improper for that reason, alone."

N.C. Gen. Stat. § 47F-3-102(12) (2015) provides for the imposition of *reasonable* fines. The association may

> After notice and an opportunity to be heard, impose reasonable fines or suspend privileges or services provided by the association (except rights of access to lots) for reasonable periods for violations of the declaration, bylaws, and rules and regulations of the association[.]

The record clearly indicates, and there is no factual dispute, that Defendant refused to accept or review Plaintiffs' application without them also posting a $250 bond. Defendant fined Plaintiffs $100 for each day they did not submit the illegal $250 bond, totaling $1,400 worth of fines. Defendant subsequently reduced the amount of the fine to $1,050. The additional requirement of a bond is not authorized either by the Covenants or required by the PCA.

Plaintiffs attempted to submit their application without the bond, which Defendant refused to accept until the bond was submitted, under protest. Defendant then fined Plaintiffs for each day it had refused to accept Plaintiffs' application without the illicit bond. Defendant did not impose the fine for any other violation. Defendant's imposition of the fine was unlawful. *See* N.C. Gen. Stat. § 47F-3-102(12).

Defendant's imposition of a fine for Plaintiffs not submitting the illegal $250 bond is plainly not reasonable. *See Id.* Presuming *arguendo*, Defendant provided Plaintiffs with proper statutory notice and an opportunity to be heard before imposing the fine, imposing the fine itself is, *ipso facto,* to the illegal bond requirement, unlawful as it is not authorized by the Covenants and is not required under the PCA. *Id.*

## VI. Conclusion

Viewing the evidence in the light most favorable to Plaintiffs, as is required upon Defendant's motion, no genuine issue of material fact exists that Defendant unlawfully required Plaintiffs to post a bond with their application, and illegally imposed a fine for Plaintiffs' failure to do so.

The trial court's grant of summary judgment to Defendant is reversed and the matter remanded to the superior court with instructions to enter summary judgment in favor of Plaintiffs. *It is so ordered.*

REVERSED AND REMANDED.

Judge STROUD concurs.

Judge HUNTER dissents in a separate opinion.

HUNTER, JR., Robert N., Judge, dissenting in a separate opinion.

I respectfully disagree with the majority's decision reversing the trial court's order. I would dismiss the portion of Plaintiffs' appeal arguing imposition of the bond was improper. I would affirm the trial court's order granting summary judgment for Defendant and dismissing with prejudice Plaintiffs' claims for declaratory relief as to the issue of whether Defendant failed to properly impose the fine.

Trial courts have discretion to decline to enter declaratory judgment. The North Carolina Declaratory Judgment Act provides in pertinent part: "[t]he court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding . . . ." N.C. Gen. Stat. § 1-257 (2015).

The issue of whether Defendant had authority to impose the $250 construction bond is moot, as both parties agree Defendant fully refunded the bond to Plaintiffs. The majority asserts the issue is "capable of repetition yet evading review" and therefore, not moot. This Court has stated cases are capable of repetition yet evading review when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Crumpler v. Thornburg*, 92 N.C. App. 719, 723, 375 S.E.2d 708, 711 (1989) (quoting *Leonard v. Hammond*, 804 F. 2d 838, 842 (4th Cir. 1986)).

Because the bond had been fully refunded at the time of trial there was no longer a controversy present needing judicial wisdom. The issue of imposition of a bond is not ordinarily an event of short duration so as to evade full litigation. If Defendant had not refunded the bond, then the imposition would not expire, and Plaintiffs would have ample opportunity to litigate their claim. Yet here, because the bond has been fully refunded, addressing the issue will have no practical effect on the controversy and the trial court properly exercised its discretion to decline to enter declaratory judgment.

As to the issue of whether imposition of the fine was improper, Plaintiffs did not ask the trial court to decide whether Defendant had the authority to impose the fine in their complaint. Instead, Plaintiffs challenged Defendant's failure to comply with the proper procedures and statutory requirements for imposition of fines. Lacking an allegation in the complaint asking for a determination of the authority to impose fines, this Court should decline to address whether Defendant had authority to impose the fines and instead only address whether Defendant complied with the procedural requirements for imposition of the fines. Plaintiffs' brief states "[s]pecifically, the issue before this Court is whether the notice of hearing issued by the Association was sufficient to put the Plaintiff-Appellants on 'notice of the charge,' as required by G.S. 47F-3-107.1."

I would conclude Defendant complied with statutory requirements when it issued Plaintiffs two notices.  The procedure for imposing fines for violations of the Association's rules and regulations is set forth in N.C. Gen. Stat. § 47F-3-107.1 which provides, in pertinent part:

> Unless a specific procedure for the imposition of fines or suspension of planned community privileges or services is provided for in the declaration, a hearing shall be held before the executive board or an adjudicatory panel appointed by the executive board to determine if any lot owner should be fined or if planned community privileges or services should be suspended pursuant to the powers granted to the association in G.S. 47F-3-102(11) and (12). Any adjudicatory panel appointed by the executive board shall be composed of members of the association who are not officers of the association or members of the executive board.  The lot owner charged shall be given notice of the charge, opportunity to be heard and to present evidence, and notice of the decision.

Because the covenants at issue in this case do not contain a specific procedure for the imposition of fines, the procedure set forth in the Act governs.  The Act provides certain minimal due process guarantees, allowing imposition of fines only after an owner is given: (1) notice of the charge; (2) an opportunity to be heard and to present evidence; and (3) notice of the decision.  N.C. Gen. Stat. § 47F-3-107.1; *Reidy v. Whitehart Ass'n,* 185 N.C. App. 76, 84, 648 S.E.2d 265, 271 (2007).

Here, Defendant issued Plaintiffs two notices.  First, Defendant sent "Notice of ACC Violation" dated 3 October 2013, ordering Plaintiffs to "cease and desist"

clearing the trees on their property until Plaintiffs submitted the proper application form and $250 "Refundable Construction Bond." The letter included the regulation outlining the procedure for obtaining the approval of the Architectural Committee prior to conducting construction or improvements. Defendant sent another notice dated 23 October and titled "Hearing Notice." This letter again indicated Plaintiffs failed to comply with the proper procedure for obtaining Architectural Committee approval prior to clearing the trees on their property, and it indicated Defendant's authority to impose fines against Plaintiffs which could be as much as one hundred dollars per occurrence or per day. The letter also included notice of a hearing to be held on 4 November 2013 and invited Plaintiffs to attend. Nothing in the Act, or our case law suggests any particular form of notice is required beyond simply providing the owner with notice of the violation. Here, Plaintiffs were given adequate notice in the form of two written letters. Thus, I would conclude Defendant complied with the requirements of the Act in imposing a fine on Plaintiffs, and affirm the trial court's order granting summary judgment for Defendant as to this issue.

Therefore, because Defendants fully refunded the bond, Plaintiffs' complaint did not contest Defendant's authority to impose the fines, and because notice of the fines complied with statutory requirements, the trial court's order granting summary judgment to Defendant and dismissing Plaintiffs' claim for declaratory relief was proper.

*HUNTER, JR., Robert N., J., dissenting*