IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-417

No. COA21-358

Filed 21 June 2022

Iredell County, No. 20 CR 055180

STATE OF NORTH CAROLINA

v.

JERMAINE LYDELL SANDERS, Defendant.

Appeal by Town of Mooresville and Mooresville Police Department from orders entered 24 November 2020 by Judge Deborah Brown and 26 January 2021, and 11 February 2021 by Judge Christine Underwood in Iredell County District Court. Appeal dismissed by order entered 20 April 2021 by Judge Christine Underwood. We allowed a petition for writ of certiorari by the Town of Mooresville and the Mooresville Police Department to review orders entered 24 November 2020 by Judge Deborah Brown and 26 January 2021, 11 February 2021, and 20 April 2021 by Judge Christine Underwood in Iredell County District Court. Heard in the Court of Appeals 26 January 2022.

> *Perry Legal Services, PLLC, by Maria T. Perry, for defendant-appellee.*
>
> *Cranfill Sumner LLP, by Steven A. Bader and Patrick H. Flanagan, for appellants.*
>
> *Acting United States Attorney William T. Stetzer, by Assistant United States Attorney J. Seth Johnson, amicus curiae.*

*Kristi L. Graunke and Leah J. Kang for American Civil Liberties Union of North Carolina Legal Foundation, Inc.*; *Dawn N. Blagrove and Elizabeth G. Simpson for Emancipate NC, Inc.*; *Daryl Atkinson and Whitley Carpenter for Forward Justice*; *and Laura Holland for North Carolina Justice Center, amici curiae.*

MURPHY, Judge.

¶ 1     Judicial proceedings pertaining to criminal seizures of personal property in North Carolina are based on *in personam*, not *in rem*, jurisdiction. These proceedings differ from federal civil forfeiture proceedings, which are based on *in rem* jurisdiction over the property at issue. For this reason, where a federal court adopts a seizure of property by North Carolina law enforcement, federal courts assume exclusive, *in rem* jurisdiction over the seizure, as no state-level *in rem* jurisdiction exists to take priority over the federal exercise of *in rem* jurisdiction; the ordinary rule prioritizing the *in rem* jurisdiction of the first in time to exercise it does not apply unless *in rem* jurisdiction exists in the first place. Here, where the trial court issued orders purporting to exercise *in rem* jurisdiction, it erred. Accordingly, we must vacate the trial court's orders and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2     This appeal arises out of a seizure of property belonging to Defendant Jermaine Lydell Sanders by the Mooresville Police Department ("MPD"). On or about 15 November 2020, MPD officers discovered a vehicle in a hotel parking lot matching

the description of a vehicle provided by night shift officers. The vehicle, which Defendant was renting, contained $16,761.00 in cash in a plastic bag in the center console. Defendant, who was inside the hotel, fled upon seeing the officers. Meanwhile, the MPD seized the cash.

¶ 3 On 19 November 2020, Defendant appeared through counsel before the Iredell County District Court and filed a *Motion for Personal Property to be Released to Defendant* ("November Motion") arguing the currency's seizure was unlawful. However, the following day, while the November Motion was under consideration, an officer of the United States Department of Homeland Security ("DHS") informed the MPD that, because Defendant was being investigated for money laundering under 18 U.S.C. § 1956, the DHS was "adopting the case." On 23 November 2020, the MPD relinquished the currency to the DHS, and a DHS officer converted the funds into a check payable to United States Customs and Border Protection.

¶ 4 The District Court granted Defendant's November Motion in an order entered 24 November 2020 ("November Order"). Defendant's counsel promptly notified the MPD of the November Order and attempted to coordinate the return of Defendant's cash; however, the MPD indicated in response that it could not return the cash due to the adoption. Having received this response, Defendant filed a *Verified Motion to Show Cause* on 10 December 2020 briefly describing the foregoing events and alleging, *inter alia*, that the MPD unconstitutionally seized the $16,761.00, "has the

financial ability to comply with the [trial] [c]ourt's November [] [O]rder to return [Defendant's] cash[,]" "inexcusably failed to do so[,]" and "is subject to being held in contempt until it complies with the order." In response, the District Court, in an order dated 26 January 2021 ("January Order"), "decreed that the [MPD] will be held in contempt unless a representative from [the MPD] appears in person on [9 February] 2021 . . . to show cause why [it] should not be held in contempt for failure to return funds to [Defendant] as ordered . . . ."

¶ 5    A hearing was held on 9 February 2021 in accordance with the January Order, shortly after which the District Court entered another order ("February Order"). The trial court made the following relevant findings of fact in the February Order:

> 1. On [15 November 2020], the [MPD] seized $16,761.00 in cash as a part of a search of [Defendant's] rental vehicle, in violation of [his] 4th, 5th and 8th Amendment U.S. constitutional rights, as made applicable to the states by the 14th Amendment.
>
> . . . .
>
> 7. This [c]ourt acquired in rem jurisdiction over the cash on [19 November 2020—]the date [Defendant] filed the motion for return of property.
>
> . . . .
>
> 17. The [MPD] is an agency of the Town of Mooresville [("Mooresville")], and it operates under the supervision and control of . . . Mooresville. Together or severally, the said town and [the MPD] have the financial means to comply with the [November Order].

18. Although Counsel for the [MPD] argued, in defense of not being held in contempt, that . . . Mooresville and the [MPD] are incapable of returning the seized funds because a federal agency has them, this argument has previously been resolved [by the November Order] and is res judicata.

19. Furthermore, this argument is meritless in view of . . . Mooresville and [the MPD's] ability to use funds, or to liquidate assets, at their disposal so as to enable them to comply with the subject order by releasing $16,761.00 to [Defendant].

20. Finally, [the November Order] did not premise release of the amount of $16,761.00 on the [MPD's] ability to effect reversal of its wrongful transfer of a different $16,761.00 to a third party.

21. The [MPD] may never be able to reverse its unauthorized conduct in attempting to remove from this court's jurisdiction rem over which the court had jurisdiction. However, should said department later be successful in recovering $16,761.00 from federal authorities, it will obviously be entitled to keep those funds to replenish the payment required by [the November Order].

22. The [c]ourt also takes note that the [MPD] has not filed an appeal of the November . . . Order, nor a motion to set aside the [o]rder.

23. By its conduct, the [MPD] has willfully failed to comply with [the November Order].

24. . . . Mooresville and the [MPD] have had 77 days to make arrangements to comply with the [November] Order.

25. . . . Mooresville, by and through the [MPD], which town also had notice of the November . . . [O]rder, has willfully failed to comply with [the November Order].

Based upon these findings of fact, the District Court "conclude[d] as a matter of law[] [that it had] jurisdiction over the subject matter and parties[,]" that "[t]he failure of . . . Mooresville and the [MPD] to comply with [the November Order was] willful, and [that] . . . Mooresville and the [MPD] have the present ability to comply with the [November] Order." Accordingly, it "decreed that the [MPD] and . . . Mooresville are held in civil contempt of [c]ourt[] and shall purge themselves by returning $16,761.00 to [Defendant] within seven business days of entry of [the] [February] Order . . . ."

¶ 6      On 15 February 2021, Mooresville and the MPD filed a *Notice of Appeal* from the November Order, January Order, and February Order. However, in an order entered 20 April 2021 ("April Order"), the District Court dismissed the appeal on the basis that it was not timely filed and failed to invoke Rule 3 appellate jurisdiction. We allowed Mooresville's and the MPD's petition for writ of certiorari on 7 May 2021 to review the November, January, February, and April Orders.

## ANALYSIS

¶ 7      On appeal, Mooresville and the MPD argue that the trial court lacked *in rem* jurisdiction and, as such, erred in issuing the four challenged orders because it was prevented from interfering with the federal courts' exclusive *in rem* jurisdiction.

¶ 8      Under 21 U.S.C. § 881, "[a]ll moneys, negotiable instruments, securities, or

other things of value furnished or intended to be furnished by any person in exchange for a controlled substance" are "subject to forfeiture to the United States . . . ." 21 U.S.C. § 881(a)(6) (2021). Moreover, federal courts "shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress[.]" 28 U.S.C. § 1355 (2021). As such, the determinative question in this case is whether, in light of federal law, the District Court actually possessed the *in rem* jurisdiction on which it purported to base its orders.

¶ 9 *In rem* jurisdiction is a specialized form of personal jurisdiction. *Coastland Corp. v. N.C. Wildlife Res. Comm'n*, 134 N.C. App. 343, 346, 517 S.E.2d 661, 663 (1999). "The standard of review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record"; however, "[w]e review *de novo* the issue of whether the trial court's findings of fact support its conclusion of law that [it had] personal jurisdiction over [a] defendant." *Bell v. Mozley*, 216 N.C. App. 540, 543, 716 S.E.2d 868, 871 (2011), *disc. rev. denied*, 365 N.C. 574, 724 S.E.2d 529 (2012). Here, because Appellants challenge only whether the trial court possessed *in rem* jurisdiction as a matter of law, we review de novo.

¶ 10 As an initial matter, we note that the existence or nonexistence of *in rem* jurisdiction at the state level in this case is of great import, as a court assuming *in*

*rem* jurisdiction precludes the subsequent exercise of *in rem* jurisdiction by all other

courts:

> Where the judgment sought is strictly in personam, for the recovery of money or for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as res adjudicata in the other. But, if the two suits are in rem or quasi in rem, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other. To avoid unseemly and disastrous conflicts in the administration of our dual judicial system and to protect the judicial processes of the court first assuming jurisdiction, the principle, applicable to both federal and state courts, is established that *the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other*.

*Penn General Cas. Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195, 79 L. Ed.

850, 855 (1935) (citations omitted) (emphasis added). However, contrary to its

assertions in the February Order, the District Court never exercised *in rem*

jurisdiction over the seized currency.

¶ 11 Unlike the federal government, North Carolina does not have a general-

purpose civil forfeiture statute. *See generally* 19 U.S.C. § 1607 (2021). The statute

applicable to this case is N.C.G.S. § 90-112, which provides, in relevant part, for the

*criminal* forfeiture of "[a]ll money . . . which [is] acquired, used, or intended for use,

in selling, purchasing, manufacturing, compounding, processing, delivering, importing, or exporting a controlled substance . . . [.]" N.C.G.S. § 90-112(a)(2) (2021). As a procedural safeguard, forfeitures under N.C.G.S. § 90-112 require

> process issued by any [D]istrict or [S]uperior [C]ourt having jurisdiction over the property except that seizure without such process may be made when[] (1) [t]he seizure is incident to an arrest or a search under a search warrant; [or] (2) [t]he property subject to seizure has been the subject of a prior judgment in favor of the State in a criminal injunction or forfeiture proceeding . . . .

N.C.G.S. § 90-112(b) (2021). While federal civil forfeiture is, quite literally, an action against the property itself,[1] North Carolina does not employ this conceptual framework; instead, our criminal forfeiture proceedings take place under the purview of a defendant's criminal trial. *See, e.g., State v. Johnson,* 124 N.C. App. 462, 478 S.E.2d 16 (1996), *cert. denied,* 345 N.C. 758, 485 S.E.2d 304 (1997).

¶ 12 In *State v. Hill*, we held that criminal forfeiture proceedings are categorically predicated upon *in personam* jurisdiction—one of the many distinguishing factors between North Carolina's criminal forfeiture proceedings and the *in rem* proceedings associated with civil forfeiture. *State v. Hill*, 153 N.C. App. 716, 718, 570 S.E.2d 768, 769 (2002) ("It is important to note that our forfeiture provisions operate *in personam*

---

[1] In federal civil forfeiture proceedings, the "party" opposite the government is—in an exercise of legal fiction—the very item seized. *See, e.g. United States v. $119,000 in U.S. Currency,* 793 F. Supp. 246 (D. Haw. 1992); *United States v. One Black 1999 Ford Crown Victoria LX*, 118 F. Supp. 2d 115 (D. Mass. 2000).

and that forfeiture normally follows conviction."). Moreover, we previously held that law enforcement may—and, indeed, must—cooperate with federal authorities and permit adoption by the federal government where applicable:

> State and local agencies are allowed to cooperate and assist each other in enforcing the drug laws. [N.C.G.S.] § 90-95.2 (2001). Cooperation by state and local officers with federal agencies is *mandated* by [N.C.G.S.] § 90-113.5 which provides:
>
>> It is *hereby made the duty* of . . . all peace officers within the State, including agents of the North Carolina Department of Justice, and all State's attorneys, to enforce all provisions of this Article [Controlled Substances Act] . . . *and to cooperate with all agencies charged with the enforcement of the laws of the United States,* of this State, and all other States, relating to controlled substances.
>
> [N.C.G.S.] § 90-113.5 (2001) (emphasis added).

*Id.* at 721, 570 S.E.2d at 771. Here, where Defendant's currency was taken from the vehicle pursuant to N.C.G.S. § 90-112, we are bound by our decision in *Hill* to hold that any challenge to that forfeiture would have necessarily been predicated on *in personam* jurisdiction, not *in rem* jurisdiction.

¶ 13    As the trial court never exercised *in rem* jurisdiction, the trial court erred in any legal conclusion in the challenged orders premised on the exercise of *in rem* jurisdiction. In *Hill*, we held that "[o]nce a federal agency has adopted a local seizure,

a party may not attempt to thwart the forfeiture by collateral attack in our courts, for at that point exclusive original jurisdiction is vested in the federal court." *Id.* at 722, 570 S.E.2d at 772. The proposition that *in rem* jurisdiction attaches due to the actions of law enforcement stands in clear opposition to *Penn General*, in which the United States Supreme Court held that "the *court* first assuming jurisdiction over the property"—not the executive agents—"may maintain and exercise [*in rem*] jurisdiction to the exclusion of the other"; however, as we are without power to override our prior holdings, *Hill* remains in effect until such time as it may be corrected by our Supreme Court. *Penn General*, 294 U.S. at 195, 79 L. Ed. 2d at 855 (emphasis added); *see also In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). Accordingly, under *Hill*, the November Order was issued by a court without *in rem* jurisdiction; and, as the three subsequent orders were premised on the validity of the November Order, those orders are void.[2]

---

[2] With certiorari having been allowed and the underlying orders having been entered in error, any further issues arising from the April Order are moot. *See McVicker v. Bogue Sound Yacht Club, Inc.*, 257 N.C. App. 69, 73, 809 S.E.2d 136, 139–40 (2017) ("A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy.").

**CONCLUSION**

We are hamstrung by *Hill*; we must therefore hold that Defendant's sole avenue for retrieving the currency unlawfully seized from him by the MPD is to seek redress from federal authorities. Accordingly, we vacate the trial court's orders and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED.

Judges DILLON and ZACHARY concur.